IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIANNA MORSE,<br>Plaintiff | : <br> : <br> : CIVIL NO. 3:13-cv-00625 |
| v. | : <br> : (JUDGE NEALON) |
| ALLIED INTERSTATE, LLC,<br>Defendant | : <br> : |

FILED
SCRANTON
DEC 10 2014
PER _____
DEPUTY CLERK

## MEMORANDUM

On March 8, 2013, Plaintiff, Julianna Morse, filed a complaint against Defendant, Allied Interstate, LLC, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA") and the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 et seq. (Doc. 1). Following discovery, both parties filed motions for partial summary judgment with statements of facts and supporting briefs. (Docs. 22-24, 28-29, 32-34, 37). The parties seek judgment on Plaintiff's TCPA claim, and at issue is whether Defendant's dialing technology is an "automatic telephone dialing system" ("ATDS").[1] See 47 U.S.C. § 227(a)(1)(A). The motions are now ripe for disposition, and for the reasons that follow, Plaintiff's motion will be granted.

---

[1] Pursuant to the TCPA, "[i]t shall be unlawful ... to make any call ... using an automatic telephone dialing system" which is defined as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." 47 U.S.C. § 227.

I.   **Standard of Review**

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. Lujan v. National Wildlife Federation, 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). All inferences "should be drawn in the light most favorable to the nonmoving party, and where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Pastore v. Bell Tel. Co., 24 F.3d 508, 512 (3d Cir. 1994), quoting Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

II.  **Statement of Facts**

In an attempt to collect a debt, Defendant placed three-hundred fifty-six

(356) calls to Plaintiff's cellular phone number. (Doc. 23, ¶¶ 3 & 10) admitted in (Doc. 29-1, ¶¶ 3 & 10); see also (Doc. 28-1, ¶ 2) admitted in (Doc. 32). The calls were placed by Defendant's dialing software, which is automated with no manual intervention, or, in other words, which makes calls without a human contemporaneously dialing the number. (Doc. 23, ¶¶ 5 & 8) admitted in (Doc. 29-1, ¶¶ 5 & 8). According to Varun Marwaha, Defendant's senior vice-president of technology, Defendant utilizes a dialer to place calls after employees develop client-specific mapping layouts. (Doc. 28-1, ¶¶ 3-7) admitted in (Doc. 32). When Defendant receives a collection file from a client, the system automatically retrieves the file, loads it into the system, and populates the fields designed for each specific client, including a phone number field. (Doc. 28-1, ¶¶ 6 & 8) admitted in (Doc. 32). Once live agents are logged into the system, files are automatically loaded into the dialer and calls are placed only to those account-holders whose contact information has been entered from the files provided by clients. (Doc. 28-1, ¶¶ 11 & 14) admitted in (Doc. 32, ¶¶ 11 & 14). The dialing system is designed to only forward a call to one of Defendant's employees if a call is answered by a live person. (Doc. 23, ¶ 6) admitted in (Doc. 29-1, ¶ 6). During each of the calls to Plaintiff's cellular phone, the call was not forwarded to a human. (Doc. 23, ¶ 7) admitted in (Doc. 29-1, ¶ 7).

Defendant's system cannot randomly or sequentially generate telephone numbers but the system has the capacity to store and dial random and sequential numbers if provided with a list of such numbers which is uploaded into a mapping field specifically design to receive such a list. (Doc. 28-1, ¶¶ 13-15) admitted in (Doc. 32, ¶¶ 11-15).

### III. <u>Discussion</u>

Plaintiff moves for summary judgment on count one of the complaint which seeks: (1) $500.00 in damages for each of the three-hundred fifty six (356) phone calls that Defendant placed to Plaintiff's cellular phone using an ATDS in violation of the TCPA, (2) treble damages for willful conduct, and (3) injunctive relief. (Doc. 24, p. 1-2). Defendant contests the motion, through its own summary judgment motion, arguing that Plaintiff's number was provided by a creditor and that it did not use an ATDS as defined by the TCPA because its system "does not have a random or sequential number generator, and thus it cannot store or produce randomly or sequentially generated numbers." (Doc. 28-2, pp. 6, 15-21, 23-29). Defendant also contends that its system cannot place calls without a human agent's involvement as Plaintiff maintains. (Doc. 28-2, pp. 7, 21-23, 29-31). Defendant believes Plaintiff has failed to produce any evidence demonstrating that its system constitutes a "predictive dialer" as the term is used in the 2003 and 2008

FCC Orders,[2] and therefore has failed to establish it is an ATDS. (Doc. 28-2, p. 7). Defendant generally argues that Plaintiff cannot demonstrate that the calls were placed as part of a bulk telemarketing campaign or for some unsolicited purpose, which the TCPA was enacted to prevent, but were a result of an unpaid debt. (Doc. 28-2, p. 14).

Initially, with regard to Defendant's general argument that the TCPA was enacted to prevent telemarketing and not debt collections calls, as noted in this Court's June 26, 2014 Memorandum, the United States Court of Appeals for the Third Circuit and the Federal Communications Commission ("FCC") have already determined that the TCPA applies to non-telemarketing calls. See (Doc. 20, pp. 3-4), citing Gager v. Dell Fin. Servs., LLC, 727 F.3d 265, 273 (3d Cir. 2013) (applying the TCPA to debt collections calls made to a cellular phone); In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and

---

[2] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act, 18 FCC Rcd 14014, 14022 n.31 (June 26, 2003) ("A predictive dialer is an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call.") and In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd 559, 563 n.23 (January 4, 2008).

Declaratory Ruling, 23 FCC Rcd 559, 564 (January 4, 2008) (applying the TCPA to debt collection calls placed to wireless phones).

As to Defendant's argument that Plaintiff has not established that its system is a "predictive dialer," it is concluded that Plaintiff has established that Defendant's system is sufficiently similar to those contemplated in the 2003 and 2008 FCC Orders in question, and if those FCC Orders are to be followed, Plaintiff's motion should be granted. It is undisputed that Defendant called Plaintiff's cellular phone for the purposes of collecting a debt three hundred and fifty-six (356) times. The evidence sufficiently establishes the parameters of Defendant's dialing system to permit a determination as to whether the system is an ATDS under the FCC Orders. As noted supra, Defendant's system cannot in its current state randomly or sequentially generate telephone numbers. (Doc. 28-1, ¶¶ 13-15) admitted in (Doc. 32, ¶¶ 11-15). But, the system has the capacity to store and dial random and sequential numbers if provided with a list of such numbers which is uploaded into a mapping field specifically designed to receive such a list. Id.

Under the 2003 FCC Order, the "principal feature of predictive dialing software is a timing function, not number storage or generation," and the basic function of this technology is "the *capacity* to dial numbers without human

intervention." <u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act</u>, 18 FCC Rcd 14014, 14091-92, ¶¶ 131 & 132 (June 26, 2003) (emphasis in original). The FCC determined that a "predictive dialer" is within the meaning and definition of an ATDS, holding that "to exclude from these restrictions equipment that use predictive dialing software from the definition of 'automated telephone dialing equipment' simply because it relies on a given set of numbers would lead to an unintended result." <u>Id.</u> at 14092-93, ¶ 133. Further, the human intervention test of the 2003 FCC Order does not inquire as to whether there is human intervention at the entering of a "given set of numbers" or programming of the computer system, but rather if there is human intervention at the time a call is made/placed or when a number is actually dialed. <u>See</u> (Doc. 33, pp. 22-23 n.12), <u>citing</u> <u>Sterk v. Path, Inc.</u>, 2014 U.S. Dist. LEXIS 7307 (N.D. Ill. 2014). The <u>Sterk</u> Court correctly concluded in its interpretation of the 2003 Order that "[i]t is the ultimate calling from the list by the automated equipment that is the violation of the TCPA." <u>Sterk</u>, 2014 U.S. Dist. LEXIS 73507 at *14-15.

Here, the parties agree there was no human intervention at the time the calls were placed. The calls were made without a human contemporaneously dialing the number as Defendant's dialing software is automated with no manual

intervention needed. (Doc. 23, ¶¶ 5 & 8) admitted in (Doc. 29-1, ¶¶ 5 & 8). Defendant's "dialer," which loads five thousand (5,000) numbers per interval to be called and transferred to available operators upon human contact, is called "Aqrate." (Doc. 22-6, pp. 8-15). This technology is precisely that contemplated by the FCC in the 2003 and 2008 Orders, a predictive dialer which "calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call," which was determined by the FCC to be an ATDS. <u>In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 23 FCC Rcd 559, 563 n.23 (January 4, 2008), <u>citing</u> <u>In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, 18 FCC Rcd 14014, 14091, ¶ 131 (June 26, 2003); <u>see also</u> <u>Dominguez</u>, 8 F. Supp. 3d 643 ("[T]his Declaratory Ruling pertains to the unique characteristics of predictive dialers."). Accordingly, under both FCC Orders Defendant's system is an ATDS and the calls in question violated the TCPA.

Defendant urges this Court to disregard the FCC Orders because the statutory language[3] is clear and unambiguous and Congress did not specifically grant the FCC authority to regulate the definition section of the statute. Defendant argues that the FCC lacks the authority to modify a statutory definition of an

---

[3] <u>See</u> footnote 1, herein.

ATDS and that this Court's analysis of the definition of ATDS should begin and end with the language of the statute. (Doc. 34, pp. 1-4). Defendant believes Congress had "clear intent to reserve the FCC's rule-making authority to those topics set forth in §§ 227(b)(2) and (c)(1)." (Doc. 34, p. 10). Defendant submits that the FCC advisory opinions in question pertain to the definitions section of the TCPA (§ 227(a)) and Congress did not delegate the rule-making or regulatory authority to the FCC over the definitions,[4] and, accordingly, the Hobbs Act[5] and Chevron[6] deference are immaterial. (Doc. 34, pp. 5-10), citing Marks v. Crunch San Diego, LLC, 2014 U.S. Dist. LEXIS 152923 *6-7 (S.D. Cal. 2014) (holding that the FCC's 2003 statutory interpretation of an ATDS is not binding on district courts because the language is clear and unambiguous and the FCC does not have the authority to change the TCPA's definition of an ATDS). Defendant

---

[4]Ironically, not too long ago, Defendant argued that this Court should stay this matter because a determination on "whether equipment that lacks the current capacity for random or sequential number generation constitutes an ATDS" "clearly involves technical and policy considerations within the FCC's area of expertise" and a determination of "what 'capacity' means under the TCPA" falls "within the FCC's discretion." (Doc. 17, pp. 4, 13-14, 15).

[5]28 U.S.C. §§ 2341-2351.

[6] Chevron U.S.A. v. Natural Res. Def. Council, 467 U.S. 837, 865 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984) (An administrative agency's interpretation of a statute that is fully consistent with the goals of the statute is entitled to deference.)

subsequently argues that the definition of an ATDS is unambiguous and requires the use of a random or sequential number generator, and that Defendant does not use such a number generator. (Doc. 34, pp. 10-11). Regarding the term "capacity," Defendant asserts that Defendant's system in its present capacity cannot store or produce randomly or sequentially generate telephone numbers. (Doc. 34, p. 12).

However, Plaintiff correctly argues that the Hobbs Act requires application of the 2003 and 2008 FCC Orders. (Doc. 33, pp. 8-14). The Administrative Orders Review Act, better known as the Hobbs Act, 28 U.S.C. §§ 2341-2351, expressly grants federal courts of appeals "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of all final orders of the Federal Communications Commission." 28 U.S.C. § 2342; FCC v. ITT World Communications, Inc., 466 U.S. 463, 468, 104 S. Ct. 1936, 80 L. Ed. 2d 480 (1984) ("Exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals."); New Jersey v. United States NRC, 526 F.3d 98, 101-02 (3d Cir. 2008); see also Mais v. Gulf Coast Collection Bureau, Inc., 768 F.3d 1110 (11th Cir. 2014)("The 2008 FCC Ruling is a Hobbs Act final order. . . . The 2008 FCC Ruling thus has the force of law and is an order reviewable under the Hobbs Act in the court of appeals."). "This procedural path created by the command of

Congress 'promotes judicial efficiency, vests an appellate panel rather than a single district judge with the power of agency review, and allows 'uniform, nationwide interpretation of the federal statute by the centralized expert agency created by Congress' to enforce the TCPA." Mais, 786 F.3d at 1119, citing CE Design, Ltd. v. Prism Bus. Media, Inc., 606 F.3d 443, 450 (7th Cir. 2010) (quoting United States v. Dunifer, 219 F.3d 1004, 1008 (9th Cir. 2000)); see also Nack v. Walburg, 715 F.3d 680, 685 (8th Cir. 2013), cert. denied, 134 S. Ct. 1539, 188 L. Ed. 2d 581 (2014). In other words, "district courts cannot determine the validity of FCC orders." Mais, 786 F. 3d at 1119, citing Self v. Bellsouth Mobility, Inc., 700 F.3d 453, 461 (11th Cir. 2012); see also Leyse v. Clear Channel Broadcasting, Inc., 545 Fed. Appx. 444, 455 (6th Cir. 2013) (holding that Congress intended FCC rules like the 2003 Order to have force of law reviewable only by the courts of appeal). "Hobbs Act jurisdictional analysis looks to the 'practical effect' of a proceeding, not the plaintiff's central purpose for bringing suit." Mais, 786 F.3d at 1120; B. F. Goodrich Co. v. Nw. Indus., Inc., 424 F.2d 1349, 1353-54 (3d Cir. 1970) ("The statutory procedure for review is applicable although an order is not directly attacked -- so long as the practical effect of a successful suit would contradict or countermand a Commission order."). "The district courts lack jurisdiction to consider claims to the extent they depend on establishing that all or

11

part of an FCC order subject to the Hobbs Act is 'wrong as a matter of law' or is 'otherwise invalid.'" Mais, 786 F.3d at 1120, citing Self, 700 F.3d at 462.

Defendant's attempt to differentiate the Mais decision is unpersuasive. Defendant argues Mais pertains to section 227(b)(1)(a), as opposed to section 227(a)(1) at issue sub judice, and that Congress expressively granted the FCC authority "to prescribe regulations to implement the requirements" of section 227(b)(1)(a) but not of section 227(a)(1). (Doc. 34, pp. 8-9), citing 47 U.S.C. § 227(b)(1). The Hobbs Act is clear and in no way indicates that a district court can disregard final orders of the FCC simply because Congress did not specifically grant the FCC express authority to regulate a specific subsection of the TCPA. Moreover, a decision as to whether the FCC exceeded its authority is to be made by the courts of appeals. See 28 U.S.C. § 2342. Because the Hobbs Act prevents this Court from questioning the validity of the 2003 and 2008 FCC Orders, they will be applied. ITT World Communications, Inc., 466 U.S. at 468; United States NRC, 526 F.3d at 101-02 (3d Cir. 2008); see also Hartley-Culp v. Green Tree Servicing, LLC, 2014 U.S. Dist. LEXIS 145851, *5-6 (M.D. Pa. 2014) (Munely, J.) (following "binding precedent" and Hobbs Act in following FCC Orders); Anderson v. AFNI, Inc., 2011 U.S. Dist. LEXIS 51368, *32 (E.D. Pa. 2011), but see Dominguez v. Yahoo! Inc., 8 F. Supp. 3d 637 *19 (E.D. Pa. 2014).

As stated above, under the Orders, Defendant's dialing system is an ATDS under the TCPA and the three-hundred fifty-six (356) phone calls placed to Plaintiff's cellular phone were in violation of the TCPA. Accordingly, under section 47 U.S.C. § 227(b)(3) Plaintiff is entitled to $500 in damages per phone call. A determination on treble damages is left for a jury.

## IV. Conclusion

Plaintiff's motion for partial summary judgment will be granted because the evidence clearly establishes that its system is an ATDS as determined by the FCC.

A separate order will follow.

Date: December 9, 2014          **United States District Judge**